IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK CORNWALL<br>*Plaintiff,*<br><br>v.<br><br>DELAWARE COUNTY, *et al.*<br>*Defendants.* | CIVIL ACTION NO. 21-2456 |

MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT [ECF 89]

BAYLSON, J.                                              February 13, 2026

### I.   INTRODUCTION

Plaintiff Patrick Cornwall ("Plaintiff") alleges that, while incarcerated at George W. Hill Correctional Facility ("GWH"), he was denied adequate medical care. Second Amended Complaint ¶ 10–26 ("SAC," ECF 58). Pursuant to these allegations, Plaintiff asserts constitutional violations under § 1983 against Defendants GEO Group, Inc., Delaware County, Jessica Wilson, Quetta Brown-Yarsia, Shalayah Malloy, and Carl Pierce ("GWH Defendants"). Before the Court is GWH Defendants' Motion for Summary Judgement ("Motion," ECF 89, 89-1) and Plaintiff's Opposition ("Opp'n," ECF 91). For the following reasons, the Motion is **GRANTED** in part and **DENIED** in part.

### II.   FACTS AND PROCEDURAL HISTORY

The following facts are undisputed. When Plaintiff entered the GWH facility, medical staff recorded that he had epilepsy and seizures. Statement of Undisputed Facts ("SUF," ECF 90) at ¶ 3. On May 15, 2019, the medical team confirmed Plaintiff was prescribed seizure medications, including Luminal (phenobarbital). SUF ¶ 4. On June 4, 2019, Plaintiff missed a dose of Luminal, and Defendant Malloy signed a refusal form. SUF ¶ 5. On June 6, 2019, a

1

non-party physician on the medical staff saw Plaintiff for follow-up after melanoma removal. SUF ¶ 6.

On June 23, 2019, Plaintiff had a seizure after he did not take at least one dose of his seizure medication. SUF ¶ 11. After the seizure, Defendant Jessica Wilson treated him for a superficial head laceration. Id. Next, Defendant Quetta Brown-Yarsiah examined Plaintiff and administered seizure medication. SUF ¶ 12. Neither documented any shoulder pain or injury. SUF ¶¶ 11, 12.

On July 12, 2019, medical staff examined Plaintiff for inmate worker clearance, and there was no notation of shoulder pain or injury. SUF ¶ 13. On July 15, 2019, Plaintiff was approved for inmate work. Id.

On August 22, 2019, shoulder pain was recorded for the first time when Plaintiff reported it to Defendant Dr. Carl Pierce, who referred Plaintiff to physical therapy. SUF ¶ 14. Plaintiff did not submit any medical requests or notes about a shoulder injury before August 22, 2019. SUF ¶ 15.

Between September 4, 2019, and March 14, 2020, Plaintiff had at least 30 encounters with various health care providers including with medical, physical therapy, psychiatry, dental, and other departments for shoulder pain, seizures, chronic care, mental health complaints, mouth sores, hearing loss, skin conditions, and other health concerns. SUF ¶¶ 16–49. In his deposition, Plaintiff stated that he did not remember a time at GWH where he requested a doctor and they refused to see him. Mot. Exh. C (ECF 89-5) at 47:10–48:1. Plaintiff stated "[t]hey always saw you." Id.

On September 11, 2019, Plaintiff refused to see medical because he stated he was receiving physical therapy. SUF ¶ 17. On February 26, 2020, Plaintiff refused treatment and

medications and became angry because he was placed in SHU. SUF ¶ 43.  On November 7, 2019, and again on January 23, 2020, medical performed x-rays of Plaintiff's shoulder and found no acute fracture, dislocation, or destructive bony process.  SUF ¶¶ 27, 37.  On February 14, 2020, medical went over the MRI results with Plaintiff, and the MRI showed several low-grade partial thickness tears of the supraspinatus and infraspinatus tendons, and medical stated that an orthopedic consultation would be arranged.  SUF ¶ 40.  On or about March 14, 2020, Plaintiff was discharged medically and discharged from the George W. Hill facility.  SUF ¶ 50.

### III.    DISCUSSION

Plaintiff alleges the GWH Defendants have violated his Eighth Amendment rights pursuant to the cause of action available in 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).  There is no dispute that the GWH Defendants are state actors.

### A.    Plaintiff Has Failed to Show Individual Defendants Acted with Deliberate Indifference

As a general matter, failure to provide adequate medical treatment violates the Eighth Amendment only when it results from "deliberate indifference to a prisoner's serious illness or injury." Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To state a cognizable claim under § 1983, the Plaintiff must allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d. Cir. 2003).  See also Brown v. Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (holding that a doctor exercising professional judgment does not violate a prisoner's

constitutional rights).  It is undisputed that Plaintiff's medical needs were serious.  Mot. at 12.

Therefore, the only dispute is whether prison officials committed acts or omissions that indicate

a deliberate indifference to Plaintiff's serious medical need.

Acting with deliberate indifference means the actor consciously disregarded a serious risk

to the plaintiff's health or safety.  See Wilson, 501 U.S. at 298–99.  "Deliberate indifference

requires more than negligence or medical malpractice."  Charleston v. Corizon Health, Inc., No.

CV 17-3039, 2018 WL 1757606, *11 (E.D. Pa. Apr. 12, 2018) (citing Rouse v. Plantier, 182

F.3d 192, 197 (3d Cir. 1999)).  A "'mere disagreement as to the proper medical treatment'

. . . does not 'support a claim of an eighth amendment violation.'"  Pearson v. Prison Health

Serv., 850 F.3d 526, 543 (3d Cir. 2017) (quoting Monmouth Cnty. Corr. Institutional Inmates v.

Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987)).  To be found liable for deliberate indifference, an

official "must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S.

825, 837 (1994).  Plaintiff does not need to go so far as to show "acts or omissions for the very

purpose of causing harm or with knowledge that harm will result."  Id. at 835.  The Third Circuit

has found deliberate indifference "where (1) prison authorities deny reasonable requests for

medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional

refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4)

prison authorities prevent an inmate from receiving recommended treatment for serious medical

needs."  Id. at 538.  In general, where a Plaintiff complains of "inadequate medical care," the

Third Circuit has found deliberate indifference "in situations where there was 'objective

evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that

evidence." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Lanzaro, 834 F.2d at 347).

Here, Plaintiff Cornwall argues that the denial of anti-seizure medication amounts to deliberate indifference to Plaintiff's medical needs. Opp'n at 7. Because each defendant played a different role in treating Plaintiff, the Court will address Plaintiff's claims against each of them in turn. See, e.g., Pearson, 850 F.3d at 538.

### a. Shalayah Malloy

The only evidence related to Defendant Shalayah Malloy is that she signed a refusal of medication form on June 4, 2019, when prison records reflect that Plaintiff did not take his daily dose of Luminal, a medication that treats his chronic seizures. SUF 5. There is no evidence in the record that Ms. Malloy prevented Plaintiff from taking his medication, denied Plaintiff his medication, or caused a delay in administering Plaintiff's medication. The record only reflects that she signed a document designed to record inmates' refusal to take medication. In his deposition, Plaintiff stated that he had "no idea" if he got medication for his seizures on June 4, 2019, and at no point does Plaintiff assert that Defendant Malloy prevented him from getting his medication for non-medical reasons. Opp'n Ex. 1 at 24:5–7 (ECF 91-1). Plaintiff asserted that if he had refused medication on June 4, 2019, the "correct protocol for refusal of medication would have to be a sergeant would have to come down" and that "never happened," thus Ms. Malloy cannot "just sign that I refused." Opp'n Ex. 1 at 22:4–9 (ECF 91-1). He did not say whether he refused. When asked what happened with his medication on June 4, 2019, Plaintiff stated he had "no recall of anything on June 4" (Id. at 22:17–18) and that he had "no idea" if he got medication for his seizures that day (Id. at 24:5–7). Plaintiff advances no evidence that would allow a reasonable juror to infer that Ms. Malloy caused him to miss a dose of his medication or

otherwise denied him medical care.  Thus, there is no reasonable basis upon which a juror could find that she knew of a serious risk to Plaintiff's health or safety and acted with deliberate indifference to that risk.  Accordingly, the Motion is **GRANTED** as to Defendant Malloy.

### b.  Jessica Wilson

Defendant Jessica Wilson interacted with Plaintiff on June 23, 2019, after he experienced a seizure in the afternoon.  SUF 11.  Defendant Wilson treated him for a superficial head laceration caused by the seizure.  Id.  On the morning of June 23, 2029, Plaintiff did not take his seizure medication.  SUF 7; Opp'n SUF 7 (ECF 91 at 16).  There is a dispute of fact as to whether a non-party member of the medical staff denied Plaintiff his medication as punishment for him cursing at her and calling her stupid.  Opp'n Counter-Statement of Facts ¶ 5 ("CSF," ECF 91 at 20).  However, nothing in the record suggests Ms. Wilson deprived Plaintiff of his medication or denied him medical care in any way.   There is no evidence that Ms. Wilson knew he missed any doses of his medication, or had any reason to believe there was a serious risk to his health that she was ignoring.  Because Plaintiff advances no evidence that Ms. Wilson denied him of his medication or refused to give him medical care with conscious disregard for any serious risk to Plaintiff's health, there is no reasonable basis upon which a juror could find that she acted with deliberate indifference to Plaintiff's needs.  Accordingly, the Motion is **GRANTED** as to Defendant Wilson.

### c.  Quetta Brown-Yarsia

Defendant Quetta Brown Yarsiah also interacted with Plaintiff on June 23, 2019, after he experienced a seizure.  SUF 12.  After Plaintiff experienced the seizure and was treated for a head laceration by Defendant Wilson, Defendant Brown Yarsiah, a nurse practitioner, gave him a medical exam, reviewed his chart, and administered his medication.  SUF 12.  The record

contains no evidence that Ms. Brown Yarsiah denied him medical care in any way or prevented him from taking his medication.  Because Plaintiff has not advanced evidence that Defendant Brown Yarsiah denied Plaintiff medical care or medication, or was otherwise aware of a substantial risk of serious harm and ignored the risk, no reasonable juror could find she acted with deliberate indifference to his medical needs.  Accordingly, the Motion is **GRANTED** as to Defendant Brown Yarsiah.

### d.  Carl Pierce

Defendant Dr. Carl Pierce interacted with Plaintiff on August 22, 2019.  Plaintiff had a chronic disease follow-up appointment with Defendant Pierce where Plaintiff complained about shoulder pain.  SUF 14.  Defendant Pierce referred Plaintiff to physical therapy.  Id.  Plaintiff does not advance any argument that Defendant Pierce acted with deliberate indifference and the record does not contain any reference to Defendant Pierce denying Plaintiff medical care or medication or otherwise consciously disregarding a serious risk to Plaintiff's health.  As such, no reasonable juror could find Defendant Pierce acted with deliberate indifference to Plaintiff's serious medical needs and the Motion is **GRANTED** as to Defendant Pierce.

### B.  Plaintiff's Monell Claim Is Not Deficient as a Matter of Law

Delaware County and the GEO Group move for summary judgment of Plaintiff's Monell claim (Count II) on the grounds that Plaintiff has insufficient evidence to establish any unconstitutional policy or practice resulted in a denial of medical care.  Defendants argue that Plaintiff's testimony, combined with cases and articles containing other inmates' complaints about lack of medical care, are insufficient as a matter of law to support a finding of unconstitutional policy or practice or failure to train employees.  Mot. at 22.

7

In <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658 (1978), the Supreme Court held that a municipality can be found liable under § 1983.  Municipal liability attaches, however, only where the municipality itself causes a constitutional violation—a municipality is not subject to *respondeat superior* or vicarious liability under § 1983.  <u>Id.</u> at 694–95.  This holding has been extended to private corporations performing municipal functions.  <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 581–84 (3d Cir. 2003); <u>see also</u> <u>Gannaway v. Prime Care Medical, Inc.</u>, 150 F.Supp.3d 511, 530 (E.D. Pa. 2015).  To sufficiently establish <u>Monell</u> liability, a plaintiff must show that he suffered a constitutional deprivation resulting from an official corporate policy or custom.  <u>See</u> <u>Natale</u>, 318 F.3d at 583–84.  There are three situations where acts of an employee may be deemed to be the result of a policy or custom to satisfy <u>Monell</u>:

> "The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy.  The second [custom] occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself.  Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."

<u>Id.</u> at 584.

Here, Plaintiff asserts that he was denied medication because the GEO Group and Delaware County had a practice or custom of keeping vital medications in a locked box on the medication trolley, but the staff member wheeling the trolley did not have a key to the box.[1]

---

[1] In his Amended Complaint, Plaintiff advanced an additional argument that he was denied medical care for his shoulder injury.  However, Plaintiff does not dispute that he did not "send any medical requests or notes to any staff at George W. Hill about a shoulder injury until he informed Dr. Pierce on August 22, 2019."  SUF 15.  The record reflects that he received extensive treatment for his shoulder injury once he alerted medical staff to it.  Further, Plaintiff admitted that he was seen by medical staff for his shoulder injury, but staff did not give him the treatment he preferred or believed he should receive.  Mot. Exh. C at 48–49.  Disagreements about Defendants' determinations that an injury does not need treatment does not establish a claim of deliberate indifference.  <u>See</u> <u>Durmer v.</u>

Opp'n at 8.  As factual support, Plaintiff cites his own testimony where he describes the lock box

system.[2]  Plaintiff stated in his deposition:

> "It's this whole procedure the jail had going on was that they would come and give everyone medication but they had this lock box and every single time they say I'm sorry I don't have the key … but here's your other medication. . . . I would take trazodone [another medication].  It made me sleepy.  They would come and give me my nighttime phenobarbital.  Half the time not come back and I'd have to call the control unit and say are you going to send me down to get my medication or not?  Or they would call me sometimes 11, 12, or 1 o'clock in the morning because they don't have the key to open the box where my phenobarbital is in there? [sic] That I'm sleeping in bed and then they'll wake me, Cornwall you gotta go down to nurse.  And it's freezing cold down there.  . . . And I have to sit there like a dog in that cell waiting for them to give me the medication . . . Almost every single day they did that to me.  . . . I think it's just a terrible way that they had the key situation with this lock box with my narcotics medication in it."

Opp'n Exh. A at 30:7–31:15.  The record also contains several instances where medical staff

recorded Plaintiff as refusing to take medication without his signature on the refusal line.

ECF 89-2 at GEO159, GEO161, GEO164.  Further, there is a record of Plaintiff arguing with a

member of the medical staff and then not receiving his medication, but the parties dispute

---

O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (citations omitted) ("Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners.").  The sufficiency of medical treatment cannot be the basis for a claim of deliberate indifference if it is withing reasonable medical discretion.  Pearson v. Prison Health Serv., 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an [E]ighth [A]mendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)).  Plaintiff appears to have abandoned his argument that medical care on his shoulder was delayed or denied intentionally, and the Court dismisses this theory of Monell liability for the reasons stated above.

[2] Plaintiff cites six cases where GWH inmates complain of lack of medical care.  The Court finds these complaints are not sufficiently similar to the pattern or custom alleged here to provide factual support.  They are merely examples that would support a general practice of denying medical care, if they were true.  However, Plaintiff himself stated that he did not remember a time at GWH where he requested a doctor and they refused to see him.  Mot. at 7, Exh. C at 47–48.  Plaintiff stated "[t]hey always saw you."  Id.

Defendants argue the Court should disregard complaints filed by other inmates because other complaints, without findings of liability, are mere allegations of misconduct and cannot form a factual basis to show practice or custom that would lead to liability.  However, Defendants do not cite controlling authority to support this assertion.  "[C]ourts in this circuit—including the court of appeals—have accepted similar numbers of *incidents* as evidence of a pattern."  Thomas v. City of Philadelphia, No. CV 17-4196, 2019 WL 4039575, at *20 (E.D. Pa. Aug. 27, 2019) (emphasis added); see also Beck v. City of Pittsburgh, 89 F.3d 966, 969–70, 973 (3d Cir. 1996) (finding that five written civilian complaints of similar misconduct were sufficient to show a pattern).  The Court finds the complaints Plaintiff cited unavailing because they do not show a practice of withholding medication for non-medical reasons, not because complaints of other inmates are insufficient to show a pattern or practice.

9

whether he refused or it was withheld as punishment.  SUF 7; Opp'n Response to SUF 7; Opp'n

CSF 5.  Taking Plaintiff's statements as true, coupled with the record showing repeated instances

where medical staff recorded Plaintiff's refusal to take medication, without his actual signature, a

reasonable jury could conclude that GEO Group and Delaware County had a custom, at

minimum, of delaying the administration of narcotic medications for non-medical reasons (not

being equipped with the key to access medication) and failing to properly document the

circumstances of the missed doses.  A jury could find that the practice of keeping medication in a

locked box and failing to train medical personnel to administer the medication from the box

could result in the denial of medical care causing inmates to be "incarcerated under conditions

posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  Based on his personal

knowledge, Plaintiff stated his medication was kept in the box always and "every single time" he

had to take additional measures to get his medication when medical staff were unable to open the

box.  Absent undisputed facts to the contrary, the question of the veracity of Plaintiff's account is

for the jury.  A jury is permitted to find Monell liability if GEO Group and Delaware County

"turned a blind eye to an obviously inadequate practice that was likely to result in the violation

of constitutional rights" such that "policymaker[s] can reasonable be said to have been

deliberately indifferent to the need" of inmates to access their medication.  Parkell v. Danberg,

833 F.3d 313, 338 (3d Cir. 2016).  Plaintiff has created a factual issue regarding the adequacy of

GWH's administration of medication policy.  The record indicates that Delaware County and the

GEO Group were responsible for administering medication to inmates and there is a factual

dispute as to whether they had a policy and practice that denied or delayed the administration of

those medications for non-medical reasons, raising the risk of serious harm to the point of

deliberate indifference to it.  Compare id. at 339 (finding defendants were not liable for the non-

10

medical denial of medical care because the DOC, not the medical provider defendants, were responsible for administering transportation that caused inmates to miss medical appointments). Resolution of whether the evidence supports the existence of this practice or custom is for the jury and, therefore, the Motion is **DENIED** as to Count II against Delaware County and GEO Group.

IV.    <u>**CONCLUSION**</u>

For the foregoing reasons, GWH Defendants' Motion for Summary Judgment (ECF 89) is granted in part and denied in part.  An appropriate order follows.